## THOMAS v. DOCKERY.—232 S. W. (2d) 594.

Western Division.   At Jackson.   June 15, 1950.

Petition to Rehear overruled July 13, 1950.

U. A. Burgess, of Memphis, for appellant.

Campbell Yerger, of Memphis, for appellee.

SWEPSTON, J. The material question on this appeal is whether the petition for a writ of error coram nobis is sufficient in its allegations of accident, surprise or mistake.

The original complainant who is appellant here filed his bill February 16, 1948 to remove a cloud from his title to certain real estate he had acquired by warranty deed of defendant, alleging that after he had paid the purchase price of $600.00 defendant had placed of record a certain contract relating to the same trade by which it was made to appear that defendant had not been paid.

Subpoena to Answer was served on defendant February 18, 1948. Decree Pro Confesso was taken March 11, 1948 and final decree March 29, 1948 sustaining the bill.

Petition for writ of error coram nobis was filed April 13, 1948.

The writ was issued on fiat of the Chancellor and complainant notified.

Complainant as respondent to the petition filed his demurrer which was heard and overruled September 22, 1948, and exception taken by demurrant, who then answered and after a hearing on the petition, the same was sustained, and decree vacating the former decree and dismissing the original decree and entering a judgment in favor of petitioner for $600.00 with interest.

Respondent has appealed and assigned errors, but we need notice only Assignment II.

Appellee has filed a motion to dismiss for failure of appellant to file a bill of exceptions. The motion would be well taken as to any review of the evidence called for by some of the other assignments. But Assignment II is to be disposed of on the technical record and same is as follows: "The trial court erred in granting the peti-

tion for writ of error coram nobis:—(a) Because same is insufficient in its averments in not showing that the petitioner was diligent in making his defense. to the original bill in the cause, but on the contrary was very undiligent, careless and negligent in failing to make defense to the said original bill, with all the fault on his part. (b) Because said petition does not sufficiently show that petitioner 'was prevented from making his defense by surprise, accident, mistake, or fraud, without fault on his part', as required by the statutes.''

This question was properly raised by his demurrer, so we take it counsel means the Court erred in overruling the demurrer, which was directed generally against the allegations of the petition as to diligence and specifically against paragraph 4 of the petition.

The only allegations in the bill relevant to diligence are in paragraph 4, which is as follows:

''That he had no notice whatever of the intention of John Thomas, Jr., to proceed without a trial as he did in said formal cause; that immediately after he was served with process in this cause on February 18, 1948, he took the copy of the bill in cause #50901 to Mr. J. R. Surrency, an attorney in the courthouse and he believed and felt that the attorney would make proper defenses for him; that this petitioner is, as stated, not learned in the law and naturally assumed and felt justified; that to his surprise and disappointment and chagrin, Mr. Surrency turned the copy of the bill back to him within the last seven days prior to this date, (April 10, 1948); that Mr. Surrency suggested he take the matter to Mr. Coleman, who had represented him for some years; that he immediately took the copy of the bill to Mr. Coleman and Mr. Coleman then advised him that he had quit the

practice of law and suggested that he employ his present solicitor.

"That your petitioner immediately took the copy of the bill to Mr. Campbell Yerger, his present solicitor, on or about the 7th day of April 1948, which was immediately after and within 24 hours after his last conference with Mr. Surrency referred to above and with Mr. Coleman.

"That your petitioner did not know or dream that any attempt would be taken to take judgment against him in the formal cause #50901 as stated, and he did not know there was any such decree entered until April 10, 1948 when the matter was explained to him by his present solicitor;

"That he did receive from the Clerk of the Court, a bill of costs, which bill of costs was mailed from the Chancery Court Clerk's Office on April 2, 1948 to him; that he took this bill of costs immediately up to Mr. Surrency and it was following this that he had the conference with Mr. Surrency and found out that Mr. Surrency couldn't represent him; that he had never heard of it before."

We are of opinion that this assignment must be sustained.

"The petition discloses no ground of relief upon the facts stated. It is to be presumed that they are stated as strongly and fully in favor of the petitioners as the truth will warrant, and yet unless we supply by construction allegations wholly omitted, we cannot find any ground upon which the relief asked for can be granted." Thruston v. Belote, 59 Tenn. 249, 251.

In quite similar situations our Supreme Court has held that this is not within the sense of "accident", "mistake" or "surprise", and, of course, no fraud is charged.

We are aware of the statement in Bolling & Power v. Huddleston & Turner, 8 Tenn. Civ. App. 339, where it is said that each case depends upon its own facts and where a party appears to have a meritorious defense, he is entitled to as favorable construction of his allegations as is consistent with the statute providing for the writ.

Yet two things must be shown in the petition (1) a meritorious defense and (2) surprise, accident, mistake, or fraud without fault of petitioner. The want of either is fatal. This and other grounds are set out in Gibson's Suits in Chancery, Section 1255.

■ The allegations of this petition simply show that he promptly employed an attorney and expected him to handle his defense, that the attorney filed no pleadings nor did anything but later turned back the matter to the client and sent him to another lawyer who was no longer practicing and he then went to a third lawyer who filed the petition herein.

The case falls within Inman v. Fox, 1 Tenn. App. 119, 126-128 and some of the cases therein cited on page 128.

In Gallena v. Sudheimer et al., 56 Tenn. 189, 190, virtually the same facts as to employment of an attorney and his failure to file pleas were held insufficient.

See especially Jackson v. Milsom & Coe, 74 Tenn. 514, as to diligence of the party; and Dinsmore v. Boyd, 74 Tenn. 689, 696, where several cases are discussed, all holding diligence to have been lacking.

It is apparent from all cases where relief has been granted that there were some mitigating circumstances such as reliance of the client or his attorney on the representations of the opposite party or his counsel where the reliance was justified or was fraudulently induced, or where the parties made a mutual mistake, or misunder-

stood one another as in Crawford v. Williams, 31 Tenn. 341, 344; or the default judgment was entered through error or at an improper time. But as said in the Inman case, supra, the rule has been enforced strictly in the absence of proper mitigating circumstances. Mere failure of the party or his counsel to act, or simply mistaking the time for pleading or the time for trial, have never been held sufficient.

See discussion in Mitchell v. Porter, 26 Tenn. App. 498, 522, 173 S. W. (2d) 443, as to the duty of exercising diligence, when one is a party, or an attorney of record for the party in taking note of all proceedings in the case.

We sustain the assignment, reverse the decree and dismiss the petition for writ of error at the costs of appellee.

Anderson, P. J., and Baptist, J., concur.

## On Petition to Rehear.

SWEPSTON, J. Counsel for Early Dockery has filed an earnest petition to rehear. The gist of it appears in what he denominates the "Prologue" which is as follows:

"Briefly, Early Dockery says (1) that he did charge fraud in his petition for writ of error coram nobis; (2) that John Thomas, Jr. has attempted to perpetrate a fraud on the Court which should be adjusted by this Honorable Court; (3) because this case is a Chancery case and is to be adjusted on Chancery rules and according to Chancery Rules, the defense to a writ of error coram nobis is a motion to dismiss, which with assignments of error on behalf of the petitioner is heard according to rules of the Chancery cases with proof; (4) because there are no bill of exceptions preserved by John Thomas, Jr., and justified to before the Chancellor; (5) because clearly

provision should be made by this Honorable Court for permission of Early Dockery to amend his petition to meet the demurrer, as this is mandatory according to the statute, Code of Tennessee of 1932, Sections 8786, 10414, 10416 and 10468, as well as Crowder v. Turner, 43 Tenn. 551.''

Counsel's position is seen to be that, although he did not charge fraud eo nomine, he did allege facts amounting to fraud.

█ It is of course unnecessary to use the label of fraud, if the facts averred amount to a charge of same. Reference to our opinion filed June 15, 1950 will disclose that the petition for the writ of error coram nobis charged in substance that John Thomas, Jr., obtained the decree pro confesso on false evidence, that is, the false averment that he had paid Dockery the $600.00, when in truth Thomas knew he had not paid.

We think this contention overlooks the distinction between intrinsic and extrinsic fraud, which is fully discussed in Keith v. Alger, 114 Tenn. 1, at page 27 et seq., 85 S. W. 71, where the bill in equity in the State Court sought to set aside a judgment at law obtained in the Federal Court allegedly through fraud.

█ Extrinsic fraud is said to consist of conduct or occurrences extrinsic or collateral to the issues examined and determined in the action, such as inducing the opposite party by false representations to him or his attorney to stay away from court, or keeping him in ignorance of the suit, or fraudulent conduct of counsel for the successful party whereby the opposite party is deceived, and other examples suggested on page 4 of our original opinion. [232 S. W. (2d) 597.]

On the other hand false or forged documents and perjured testimony are intrinsic evidence; they are a part of

the internal chain composing the process of adjudication, the allegation, the evidence and the decree, as illustrated in Gibson page 546 by the concentric circles.

■ Under the ruling of the Keith case and by the weight of authority a judgment that has become final in the full sense of res adjudicata may not be set aside on allegation and proof of the falsity of the internal evidence, on which it was procured. See discussion in Noll v. Chattanooga Company, Tenn. Ch. App., 38 S. W. 287, 290; Sharp v. Kennedy, 13 Tenn. App. 170, 176.

■ The reason for the rule is that litigation must be brought to a close; it would never terminate if each party successively could reopen the last judgment by charging false evidence.

■ It becomes obvious that the original petition for the writ in this case alleged only intrinsic or internal fraud and such is not sufficient to obtain a writ of error coram nobis; yet even if the fraud had been extrinsic, the petition is deficient in failing to allege the petitioner was without fault in the matter.

This answers counsel (1) and (2). Number (3) is answered by the discussion in note 47, page 1051 of Gibson. Objection may be taken by demurrer as well as by motion to dismiss, where the writ is sought by bill in equity. Numbers (4) and (5) are covered in the original opinion. The judgment became final by the lapse of the term on the arrival of the new term on the first Monday in April, so that there could be no amendment unless first the decree be set aside by writ of error coram nobis.

The petition to rehear must be overruled.

Anderson, P. J., and Baptist, J., concur.